[Cite as *Dayton Pub. Schools v. Cummings Elmore*, 2020-Ohio-820.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| DAYTON PUBLIC SCHOOLS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28480 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-3990 |
| | : | |
| LISA CUMMINGS ELMORE, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

JONATHAN HOLLINGSWORTH, Atty. Reg. No. 0022976, 6494 Centerville Business Parkway, Centerville, Ohio 45459
    Attorney for Plaintiff-Appellee

SUSAN ZELLER DUNN, Atty. Reg. No. 0063893, 10921 Reed Hartman Highway, Suite 111, Cincinnati, Ohio 45242
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Lisa Cummings-Elmore[1] appeals from the trial court's judgment of June 25, 2019, in which the court essentially confirmed the award entered by the arbitrator following the arbitration of a dispute between Plaintiff-appellee, Dayton Public Schools ("DPS"), and Defendant-appellant, the Dayton Education Association ("DEA"). Presenting a single assignment of error, Cummings-Elmore argues that the court erred by confirming the award without modification. We find that Cummings-Elmore lacks standing to challenge the court's judgment, and this appeal is therefore dismissed.

## I. Facts and Procedural History

{¶ 2} Cummings-Elmore was formerly employed by DPS as a teacher. On March 9, 2016, DPS sent her a notice informing her that she had been placed on paid administrative leave in connection with an altercation between her and the principal of the school at which she worked. She was also informed that, until she received notice to the contrary from DPS, she would be regarded as a trespasser were she to enter onto any DPS property.

{¶ 3} On or about April 1, 2016, Cummings-Elmore accepted a temporary position teaching Spanish at Horizon Science Academy for a roughly four-month interval running from April 4, 2016, through July 31, 2016. In a letter dated May 25, 2016, DPS notified Cummings-Elmore that her acceptance of the temporary position at Horizon Science Academy had been deemed a "constructive resignation" of her employment with DPS, effective April 1, 2016. Transcript of Proceedings, Joint Exhibit E, Apr. 26 and May 26, 2017. DPS indicated further that Cummings-Elmore's constructive resignation would "be

---

[1] The record is inconsistent as to whether the appellant's name is Cummings-Elmore or Cummings Elmore.

recommended to the Dayton Board of Education at [its] meeting on June 21, 2016," and that DPS also planned to seek recovery of compensation it had paid her between April 1, 2016, and May 25, 2016. *Id.* At its meeting on June 21, 2016, the board accepted the purported resignation.

{¶ 4} The DEA filed a grievance on Cummings-Elmore's behalf, which DPS denied, and the grievance was then referred to arbitration. A hearing was held, beginning on April 26, 2017, and concluding on May 26, 2017, after which the arbitrator issued an award dated July 31, 2017. In the award, the arbitrator determined that DPS had violated its collective bargaining agreement with the DEA, because that agreement had no terms "deal[ing] with paid administrative leave [or] with constructive resignation." DEA's Memorandum in Opposition to DPS's Motion to Vacate, Exhibit A, Sept. 11, 2017.

{¶ 5} DPS filed an application to vacate the award in the Montgomery County Court of Common Pleas on August 28, 2017, to which the DEA responded on September 11, 2017, with a memorandum in opposition and an application to confirm the award. The case was referred to the trial court's magistrate, who entered a decision confirming the award on November 20, 2018, and the trial court largely adopted the magistrate's decision in its judgment of June 25, 2019. On July 25, 2019, Cummings-Elmore filed a timely notice of appeal; the DEA has apparently elected not to participate.

## II. Analysis

{¶ 6} After Cummings-Elmore filed her brief on August 23, 2019, DPS filed a motion to dismiss on September 11, 2019, in which it argued that Cummings-Elmore lacks standing to prosecute this appeal. We entered a decision one week later overruling the motion, though we invited DPS to "make its arguments in its brief." Decision and Entry

1, Sept. 18, 2019. DPS thereafter filed a brief on October 9, 2019, recapitulating the arguments it presented in its motion, but Cummings-Elmore did not file a brief in reply. She did, however, address the issue of standing during oral argument.

{¶ 7} Standing "is * * * a jurisdictional requirement" inasmuch as a prospective party's "lack of standing vitiates the party's ability to invoke the jurisdiction of a court" to hear an action. (Citations omitted.) *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22. Where "an employee's discharge or grievance is arbitrated between an employer and a union under the terms of a collective bargaining agreement, the aggrieved employee does not have standing to petition a [common pleas] court to vacate the award pursuant to R.C. 2711.10, unless the collective bargaining agreement expressly gives the employee an independent right to submit disputes to arbitration." *Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, ¶ 18; *see also, e.g.*, *State ex rel. Hudak v. State Emp. Relations Bd.*, 5th Dist. Stark No. 2013 CA 7, 2013-Ohio-2679, ¶ 35; *Rush v. United Parcel Serv.*, 9th Dist. Medina No. 07 CA 69-M, 2008-Ohio-1646, ¶ 10-12. The nearly identical language of R.C. 2711.11 suggests that the same would be true of a motion to modify or correct an award.

{¶ 8} Here, Cummings-Elmore's employment with DPS was subject to the Master Contract Between the Dayton Education Association and the Dayton City School District for December 21, 2013, Through June 30, 2017 (the "Master Contract"). *See* DEA's Memorandum in Opposition to DPS's Motion to Vacate, Exhibit A. The only procedures established by the Master Contract for resolving disputes between professional staff members and DPS are set forth in Article 3, captioned "Grievance Procedure," though Article 2 and Article 32 include provisions directed at two specific types of disagreement.

*Id.* Under Section 2.08, DPS and the DEA agree "to utilize an alternate settlement dispute procedure through the Federal Mediation and Conciliation Service" for purposes of contract negotiations, and under Section 32.06, professional staff members have the right to appeal decisions made by the Local Professional Development Committee to "the districtwide appeal board."[2] *Id.*

**{¶ 9}** Article 3, Section 3.01 defines a "grievance" as "<u>any question or controversy</u> between any Professional Staff Member or the [DEA]" and the "[Dayton] Board [of Education] [or] the Administration" regarding the "interpretation, application of, compliance with or noncompliance with the provisions of [the Master] Contract."[3] (Emphasis added.) *Id.* Section 3.02.1 defines a "concern" as "any questions [sic] or issue between any Professional Staff Member or the [DEA]" and the "[Dayton] Board [of Education] [or] the Administration" regarding "any complaint, dispute, problem or other condition <u>which is not a grievance as defined in Section 3.01</u>." (Emphasis added.) *Id.* A concern, like a grievance, may be resolved through the "procedures set forth in Section 3.07," except that "Level Four—Arbitration shall not be applicable * * *, and the decision of the Superintendent shall be final." *Id.*

**{¶ 10}** Concerns and grievances are the only categories of dispute defined in the

---

[2] As defined in Paragraph B of the preamble to the Master Contract, the word "board" when typed in all capitals refers to the "Dayton Board of Education." DEA's Memorandum in Opposition to DPS's Motion to Vacate, Exhibit A. In the phrase "districtwide appeal board" in Article 32, Section 32.06, the word is typed in all capitals, but the context suggests that this is likely a scrivener's error.

[3] Paragraph C of the preamble to the Master Contract defines the "Administration" as the superintendent of DPS and the superintendent's administrative staff. DEA's Memorandum in Opposition to DPS's Motion to Vacate, Exhibit A.

Master Contract, and inasmuch as Article 3 establishes the only procedures for resolving disputes between professional staff members and DPS, such a dispute must be either a "concern" or a "grievance." *See id.* Yet, a concern may not be resolved through arbitration, and under Section 46.01.1, an employee facing termination of her employment has the right "to have [her] case decided by an arbitrator pursuant to [Section] 3.07.2(D)." *Id.* The unavoidable conclusion, then, is that a challenge raised to the termination of a professional staff member's employment constitutes a "grievance" as that term is defined in Section 3.01.[4] *Id.*

{¶ 11} Under Section 3.07, a grievance may be resolved through either an informal procedure or a formal procedure. *Id.* The informal procedure amounts to little more than a conversation between the aggrieved staff member and the principal of the school at which the staff member is employed. *See id.* The formal procedure, which simultaneously provides an alternative to the informal procedure, as well as an opportunity to contest the result of the informal procedure, consists of four "levels": (1) the submission of a written grievance to which the principal of the school concerned must respond in writing; (2) an appeal to the superintendent, likewise requiring that the superintendent respond with a written decision; (3) a mediation by mutual consent, at

---

[4] Section 3.07.2(D)(1) contemplates the possibility of a single type of dispute other than a "grievance" being submitted to arbitration. DEA's Memorandum in Opposition to DPS's Motion to Strike, Exhibit A. In "the event it is claimed by the Administration [i.e. the superintendent and the superintendent's staff] that any matter filed as a grievance is not a grievance as defined in Section 3.01, such issue, as such, [sic] may be appealed to arbitration, with the arbitrator having the authority to rule on the arbitrability issue in addition to hearing any evidence or issuing any ruling in the merits of the dispute." *Id.* Even so, only "the Administration" has the right to challenge the classification of a dispute as a "grievance." *Id.*

which the "grievant shall have the right to be present"; and (4) an arbitration proceeding. *Id.* Section 3.07.02(D)(1) states that "[o]nly the [DEA] shall have the right to appeal any grievance, as defined in Section 3.01[,] to arbitration."[5] *Id.* An employee, consequently, is not a party to an arbitration proceeding under the Master Contract, because the Master Contract expressly permits only the DEA to seek arbitration. *See Leon*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, at ¶ 18.

{¶ 12} The provisions of Article 46 further support this interpretation. Under Section 46.01.1, "[a]ny employee who has received a notice of [DPS's] intention to terminate [her employment] shall have the right, within ten (10) days of [her] receipt of the notice, to either proceed with a case under [R.C.] 3319.16 * * *, or to have [her] case decided by an arbitrator pursuant to [Section] 3.07.2(D)." The first option is expressed—from an employee's perspective—in the active voice, and the second in the passive voice. In other words, Section 46.01.1 gives an employee facing termination of employment the right to choose between two options: (1) commencing a case under R.C. 3319.16 on her own behalf; or (2) requiring that the DEA, acting for her, submit the matter to arbitration. Hence, the significance of Section 46.01.1 is not that it invests an employee with an independent right to appeal a termination of employment to arbitration, but that in such a case, the DEA is affirmatively required to seek arbitration at the employee's request. Otherwise, the decision whether to submit a dispute to arbitration is left, under Section

---

[5] Section 3.07(D)(3) states that "[n]either party will be permitted to assert in any arbitration proceeding any ground or to rely on any evidence not previously * * * disclosed to the other party." (Emphasis added.) DEA's Memorandum in Opposition to DPS's Motion to Vacate, Exhibit A. This language indicates that the Master Contract was drafted in contemplation of only two parties to the arbitration of grievances: the DEA and DPS.

3.07.2(D)(1), to the DEA's discretion.   *Id.*

{¶ 13} Arguing in its brief that Cummings-Elmore lacks standing to bring the instant appeal, DPS relies on the Ohio Supreme Court's opinion in *Leon* and this court's opinion in *Cox v. Dayton Pub. Schools Bd. of Edn.*, 2d Dist. Montgomery No. 26382, 2015-Ohio-620.   The *Cox* case involved the termination of a teacher whose employment was subject to an earlier, albeit substantially similar, draft of the Master Contract.   *See Cox* at ¶ 4-5. The DEA initiated an arbitration challenging the validity of DPS's decision to terminate the employment of the appellant, Ms. Cox, and in the same proceeding, it argued that DPS had, in advance of terminating Cox's employment, violated the Master Contract by placing her on unpaid leave and by refusing to continue a disciplinary hearing.   *See id.* at ¶ 5-8. Following the arbitrator's determination that DPS "had good and just cause" for the termination, the DEA declined to initiate an action under R.C. Chapter 2711, prompting Cox to do so herself.   *See id.* at ¶ 10.

{¶ 14} DPS contends that in the *Cox* opinion, we "drew a distinction between * * * grievances," which are "governed by one provision in the Master Contract," and terminations, which are "governed by different provisions."   Appellee's Brief 15.   Thus, as DPS reads the opinion, we held that Cox "had standing to pursue judicial review [of the arbitrator's decision regarding] her termination," but not to pursue judicial review of the arbitrator's decision regarding her grievances."   *Id.*

{¶ 15} We were concerned in *Cox* primarily with the allegation that the DEA initiated the arbitration of Cox's termination without her consent, which we characterized as a violation of her statutory right to challenge her termination under R.C. 3319.16.   *See Cox* at ¶ 21-23 and 26.   As part of our analysis, we explained that whereas Section

3.07.2(D)(1) of the Master Contract applied generally to all grievances, Articles 46 and 48 of the Master Contract set forth additional provisions applicable specifically to terminations of employment. *See id.* at 20. Construing Articles 3, 46 and 48 collectively, we concluded that Cox had "standing in the termination process," given that Article 46 accorded her the right to choose whether to proceed with an action under R.C. 3319.16 on her own behalf, or to demand that the DEA initiate an arbitration. *See id.* at ¶ 23.

{¶ 16} Although the reading of *Cox* suggested by DPS is partly warranted by the text of the opinion, particularly by the assertion that "Section 46.01.1 of the Master Contract [gave Cox] the independent right to submit her termination to arbitration," we recognized that the Ohio Supreme Court's holding in *Leon* was controlling. *Id.* at ¶ 23-24. We remarked, for instance, that "[t]here is no question that a teacher has standing to appeal her termination to [a] common pleas court, <u>if she chooses the statutory procedure rather than the arbitration procedure</u>." (Emphasis added.) *Id.* at ¶ 23. Unfortunately, we were not sufficiently scrupulous in differentiating between a teacher's standing to commence an action under R.C. 3319.16, and a teacher's right under the Master Contract to require that the DEA initiate an arbitration regarding the termination of her employment.

{¶ 17} In the latter situation, we continue to adhere to the Ohio Supreme Court's holding in *Leon*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, according to which a teacher whose employment is subject to a collective bargaining agreement "will generally be deemed to have relinquished [her] right to act independently of [her] union in all matters related to or arising from the [agreement], except to the limited extent that

the agreement <u>explicitly</u> provides to the contrary."   (Emphasis added.)   *Id.* at ¶ 17, citing *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Retail Clerks Internatl. Assn., Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 341 F.2d 715, 720-721 (6th Cir.1965).   Our opinion in *Cox* should not be construed to conflict with the Court's holding in *Leon* or to create an exception to that holding with respect to terminations of employment.

{¶ 18} Cummings-Elmore's employment with DPS was subject to that version of the Master Contract which was effective from December 21, 2013, until June 30, 2017. The contract included no provision explicitly investing her with standing to seek arbitration independently of the DEA, meaning that she was not a party to the arbitration proceeding. As a result, Cummings-Elmore lacks standing to prosecute this appeal.   *See, e.g., Thompson v. Summit Pain Specialists, Inc.*, 9th Dist. Summit Nos. 27635 & 27638, 2016-Ohio-7030, ¶ 35.

{¶ 19} Finally, we note that Cummings-Elmore filed a motion on December 4, 2019, in which she requests that we enter an order directing DPS "to show cause why [it] should not be held in contempt of court" for "deliberately fail[ing] to comply" with the terms of the arbitrator's award.   Motion for Contempt and Declaratory Judgment 3, Dec. 4, 2019.   We may not consider the motion, however, in the absence of subject matter jurisdiction, which "is the power conferred upon a court, either by constitutional provisions or by statute, to decide a particular matter or issue on its merits."   *In re B.P.*, 11th Dist. Trumbull No. 2011-T-0032, 2011-Ohio-2334, ¶ 30, citing *State ex rel. Jones v. Suster*, 84 Ohio St. 3d 70, 75, 701 N.E.2d 1002 (1998).   Because "subject matter jurisdiction defines the competency of a court to render a valid judgment, it cannot be waived."   *Id.* at ¶ 31,

citing *Time Warner AxS v. Pub. Util. Comm.*, 75 Ohio St. 3d 229, 661 N.E.2d 1097 (1996).

{¶ 20} R.C. 2711.09, 2711.10 and 2711.11 allow "any party to [an] arbitration [to] apply to <u>the court of common pleas</u>" for an order confirming, modifying or vacating the award entered by the arbitrator. (Emphasis added.) Under R.C. 2711.16, subject matter "[j]urisdiction [over] judicial proceedings provided for by [R.C.] 2711.01 to 2711.14, inclusive, * * *, is generally in the courts of common pleas," and "actions and proceedings brought under such sections [of the Revised Code] <u>shall be brought</u> either in the court of common pleas of the county designated by the parties to the arbitration agreement as provided in [R.C.] 2711.08 * * *, or, whether or not such designation has been made, in the court of common pleas of any county in which a party in interest resides or may be summoned."[6] (Emphasis added.) In other words, R.C. 2711.16 "vest[s] general subject matter jurisdiction for confirmation proceedings in the courts of common pleas of the state," and the jurisdiction of appellate courts is concomitantly "confined to [reviewing] order[s] issued by * * * common pleas court[s] confirming, modifying, vacating, or enforcing [the underlying] award[s]." *United Union of Roofers, Waterproofers & Allied Trades, Local No. 44 v. Kalkreuth Roofing & Sheet Metal*, 2019-Ohio-2797, ___ N.E.3d ___, ¶ 29 (11th Dist.); *Buchholz v. W. Chester Dental Group, Inc.*, 12th Dist. Butler No. CA2007-11-292, 2008-Ohio-5299, ¶ 21.

{¶ 21} Here, because "the arbitration award was confirmed by the [trial] [c]ourt," Cummings-Elmore asks that we "reinstate [her teacher's and principal/administrator's licenses]" and "hold DPS in contempt" until it pays damages to which she "believe[s] she

---

[6] R.C. 2711.08 permits the "parties to [an] arbitration agreement [to] designate therein the county in which the arbitration shall be held and the award made."

is entitled" pursuant to the award. Motion for Contempt and Declaratory Judgment 9-11. We lack subject matter jurisdiction to consider the motion, and as a result, we order that it be stricken from the record.

### III. Conclusion

{¶ 22} Cummings-Elmore was not a party to the arbitration proceeding in which the DEA challenged the termination of her employment, and she consequently lacks standing to appeal from the trial court's judgment of June 25, 2019. Therefore, her appeal is dismissed. In addition, because this court lacks subject matter jurisdiction to consider the motion filed by Cummings-Elmore on December 4, 2019, the motion is hereby stricken.

. . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Jonathan Hollingsworth
Susan Zeller Dunn
William Steele
Hon. Michael W. Krumholtz